# United States Court of Federal Claims

No. 03-1753V
Filed Under Seal: August 24, 2010)
(Reissued: September 8, 2010)*

_____

**TIM HOKKANEN and NANCY HOKKANEN**
**as parents and natural guardians on behalf of**
**their minor son, ANDREW HOKKANEN,**

      *Petitioners*,

v.

**SECRETARY OF HEALTH**
**AND HUMAN SERVICES,**

      *Respondent*.

_____

Vaccine Act; Motion for Review;
Non-Table Injury; Statute of
Limitations; Stay of Proceedings;
42 U.S.C. § 300aa-16(a)(2)

## OPINION and ORDER

**BLOCK,** *Judge*.

      This opinion revolves around the Federal Circuit's recent decision in *Cloer v. Secretary of Health and Human Services*, 603 F.3d 1341 (Fed. Cir. 2010), and respondent's pending petition therein for panel rehearing and rehearing en banc. For the reasons explained below, the court orders a stay of all proceedings in this matter, pending final appellate action in *Cloer*.

      Petitioners, Tim and Nancy Hokkanen, allege that their minor child, Andrew, developed autism spectrum disorder ("autism") as a result of one or more childhood vaccinations. On July 23, 2003, petitioners filed a claim with the Office of the Special Masters, seeking compensation under the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-1–300aa-34 (1994 & Supp. I 1995)) ("Vaccine Act" or "Act").

      On January 29, 2008, respondent moved to dismiss the petition as untimely. *Hokkanen ex rel. Hokkanen v. Sec'y of Health and Human Servs.*, No. 03-1753V, 2009 WL 4857386, at *7 (Fed. Cl. Dec. 1, 2009) ("*Hokkanen I*"). Chief Special Master Lord concluded that the petition was filed after expiration of the three-year limitations period established by the Vaccine Act, 42

---

* This opinion originally was issued under seal on August 24, 2010. Pursuant to Rule 18(b) of the Vaccine Rules of the United States Court of Federal Claims, the parties had 14 days within which to propose redactions to the opinion prior to its publication, but no such redactions were proposed. Accordingly, the opinion is herein reissued for publication, unsealed.

U.S.C. § 300aa-16(a)(2), and dismissed the petition. *Id*. at \*24. The case is now before the court on petitioners' motion for review of the Chief Special Master's order of dismissal.

Under the Vaccine Act's statute of limitations, "no petition may be filed for compensation under the Program for [a vaccine-related] injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or the significant aggravation of such injury." 42 U.S.C. § 300aa-16(a)(2). Construing the phrase, "the first symptom or manifestation of onset," the Federal Circuit has held that the Vaccine Act's limitations period commences upon occurrence of "the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large." *Markovich v. Sec'y of Health and Human Servs*., 477 F.3d 1353, 1360 (Fed. Cir. 2007).

In articulating her understanding of the *Markovich* standard, the Chief Special Master stated that, in order "to trigger the statute of limitations, a symptom or manifestation of an injury *need not* be accepted by the medical profession at large as an injury *linked* to a vaccine; it need only be identifiable as a symptom or manifestation of an injury." *Hokkanen I*, 2009 WL 4857386, at \*18 (emphasis added). With this understanding of *Markovich* squarely in view, and based upon Andrew's medical history and expert medical evidence, the Chief Special Master "adopt[ed Andrew's] documented speech delay as of age 15 months [in July 1999] as the trigger for commencing the statute of limitations because speech delay in the second year of life is a reliable and readily discernible manifestation of autism." *Id*. at \*23. Consequently, the Chief Special Master concluded that the petition was filed "one year out of time" and granted respondent's motion to dismiss. *Id*. at \*24.

While the court's review of the Chief Special Master's decision was pending, the Federal Circuit issued its decision in *Cloer*. The *Cloer* majority held that, in general, for petitions alleging non-Table injuries, the "'first symptom or manifestation of onset . . .' cannot occur"—nor can the limitations period begin to run—"until the medical community at large objectively recognizes a link between the vaccine and the injury." 603 F.3d at 1346. Alternatively, under *Cloer*, a petitioner's receipt of a specific "medical opinion or medical knowledge that symptoms suggest a possible link between the vaccine and the injury, . . . will also suffice to trigger the statute of limitations." *Id*. at 1348. For the purposes of determining when the limitations period commences for a non-Table injury, such as autism, *Cloer* thus makes pivotal an inquiry that the Chief Special Master hitherto deemed wholly irrelevant. *See Hokkanen I*, 2009 WL 4857386, at \*18. Indeed, the Chief Special Master was firm in her conviction that "Congressional intent, statutory language, and etymology of the *Markovich* holding all support the argument that the critical event for determining the onset of the statute of limitations is the occurrence of an injury recognizable by the medical community, *rather* than recognition by the medical community that an injury is linked to a vaccine." *Id.* (emphasis added).

In light of this, the court provided the parties with the opportunity to supplement their briefing, in order to address the import of *Cloer* for the court's review of the Chief Special Master's decision. *See* Order Directing Supp. Briefing (May 7, 2010). In their supplemental briefs, both sides argue that *Cloer* buttresses their respective positions. *See, e.g*., Pet'rs' Supp. Br. at 6–9; Resp't Supp. Br. at 4–7.

On the one hand, petitioners originally argued that, under *Markovich*, the "first event" for the purpose of triggering the statute of limitations "must logically be when there are sufficient, objective, abnormal behaviors present across the three core domains of child development such [as] to raise the suspicions of the medical professionals that the child may have autism spectrum disorder." Pet'rs' Mot. for Review at 4–5 (emphasis in original). Petitioners contend that *Cloer* supports this interpretation of *Markovich* and that *Cloer* "instructs that the non-table injury is not manifest until a certain cluster of symptoms persist, making the vaccine injury evident, clear, visible, indubitable." Pet'rs' Supp. Br. at 9. Petitioners thus conclude that *Cloer* dictates reversal of the Chief Special Master's order of dismissal. *Id.*

On the other hand, respondent points to "evidence that some members of the medical community recognized a potential link between vaccines and speech delay as early as 1991, based on expert opinions offered in Vaccine Act cases." Resp't Supp. Br. at 6. On that ground, respondent contends that "*Cloer* does not affect the result in this case" which, according to respondent, should be affirmance of Chief Special Master's decision. *Id.* at 7.

At this time, however, the court declines to adopt the interpretation and application of *Cloer* that either side advances. *Cloer*'s central holding—that the limitations period for a non-Table injury does not commence until the medical or scientific community recognizes a "link between the vaccine and the injury," 603 F.3d at 1346—adds a critical new gloss on the *Markovich* standard and the statutory language. Yet, the Chief Special Master, in this case, did not consider any evidence or make any findings of fact bearing upon this newly pivotal inquiry into the medical community's recognition, or lack thereof, of a causal link between autism and any vaccine. *See Hokkanen I*, 2009 WL 4857386, at *20–24. And, while the Vaccine Act empowers the court to make its own findings of fact upon a motion for review, 42 U.S.C. § 300aa-12(e)(2)(B), such findings should generally be based upon the existing evidentiary record, as developed during the initial proceeding before the Office of the Special Masters. *See Munn v. Sec'y of Health & Human Servs.,* 970 F.2d 863, 870 (Fed. Cir. 1992) ("with regard to both fact-findings and fact-based conclusions, the key decision maker in the first instance is the special master"); *Doe ex rel. Estate of Doe v. Sec'y. of Health and Human Servs.*, 83 Fed. Cl. 157, 176 (2008) (remanding when the Special Master failed to apply the correct analysis and to consider all pertinent evidence).

Accordingly, remand to the Chief Special Master, for further development of the evidentiary record, as well as additional fact-finding, is necessary. *See* 42 U.S.C. § 300aa-12(e)(2) (providing that the court may "remand the petition to the special master for further action in accordance with the court's direction"). An immediate remand, however, would be premature, because the finality of the *Cloer* decision is in question. On June 21, 2010, respondent filed a petition for rehearing in *Cloer*. *See Cloer* (No. 2009-5052), Appellee's Combined Pet. for Panel Reh'g and Reh'g en Banc, ECF No. 22. If, upon rehearing, *Cloer*'s central holding is overturned, any further proceedings on remand to the Chief Special Master will have been a needless and eminently avoidable waste of judicial resources.

The Supreme Court has highlighted the conservation of judicial resources as an important reason for a trial court to stay proceedings in any matter pending before it. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *see also Coast Fed. Bank v. United States*, 49 Fed. Cl. 11, 15

(2001).  As *Landis* explains, the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket *with economy of time and effort* for itself, for counsel, and for litigants."  *Id.* (emphasis added).  "How this can best be done calls for the exercise of judgment," *id*., which judgment falls squarely within the court's "sound discretion," *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997).  Given present uncertainty over the fate of the squarely controlling panel decision in *Cloer*, an immediate remand to the Chief Special Master, or any continued litigation in this matter, could well prove to be a manifest waste of judicial resources.

Accordingly, this matter is hereby STAYED pending final appellate action in *Cloer*.

**IT IS SO ORDERED.**

*s/ Lawrence J. Block*

**Lawrence J. Block**
**Judge**